UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAVON PARKS,　　　　　　　　　　　　　REPORT AND RECOMMENDATION
　　　　　　　　Petitioner,
　　　　　　　　　　　　　　　　　　　　21-CV-029(LJV)(JJM)
v.

UNITED STATES, *et al.*,

　　　　　　　　Respondents.
_____

　　　　　　Petitioner Lavon Parks is a federal pretrial detainee charged, along with six co-defendants, in a companion federal criminal action with a variety of controlled substance and firearms offenses (United States v. Lavon Parks, *et al.*, 19-CR-0087(LJV)(JJM)). He recently commenced this action *pro se* for habeas corpus relief pursuant to 28 U.S.C. §2241 and for a temporary restraining order (Petition [1])[1], together with a motion to proceed *in forma pauperis* [2], which have been referred to me for initial consideration [3]. The Petition [1][2] seeks Parks' immediate release from custody primarily as a result of the substantial risks possessed by the coronavirus ("COVID-19") pandemic and the conditions of his confinement.

　　　　　　Having carefully considered the parties' pre- and post-argument submissions [1, 5, 7, 9] and heard oral argument on February 12, 2020 [6], I recommend that the motion to proceed *in forma pauperis* [2] be granted and that the Petition [1] be dismissed.

---

[1]　　Unless otherwise indicated, bracketed references are to CM/ECF docket entries in this action, and all page references, whether to this or the criminal action, are to CM/ECF pagination (upper right corner of the page).

[2]　　The Petition consists of two Declarations, both from Parks.

# BACKGROUND

A.   **Parks' Bail History in the Criminal Action**[3]

The issue of Parks' release has been repeatedly litigated in his criminal case. Following Parks' arraignment on the initial May 2, 2019 Indictment (19-CR-0087 [1]) which charged him with drug and conspiracy offenses (id., Counts 1-3), I ordered him released on conditions. 19-CR-0087 [36]. District Judge Lawrence J. Vilardo later denied the government's appeal of my release order (19-CR-0087 [42]), but imposed modified conditions of release. 19-CR-0087 [54].

On October 24, 2019, the Superseding Indictment (19-CR-0087 [137]) was returned, which added two new charges against Parks related to the January 21, 2018 homicide of Kevin Turner. Following a detention hearing, I continued his release. 19-CR-0087 [149]. The government again appealed (19-CR-0087 [143]), and following argument before Judge Vilardo, Parks was detained. 19-CR-0087 [177].

On March 24, 2020, shortly after the commencement of the COVID-19 outbreak, Parks moved for temporary release from the Niagara County Jail ("NCJ") (19-CR-0087 [228]), where he remains detained, pursuant to 18 U.S.C. §3142(i).[4] By Decision and Order dated April 17, 2020 (19-CR-0087 [247]), Judge Vilardo denied Parks' motion, explaining that:

> "Parks does not allege that he suffers from any condition that would render him a vulnerable person as defined by the CDC. Rather, Parks urges that the conditions of confinement at the [NCJ] are such that it

---

[3]   Since the parties' familiarity with the history of Parks' pretrial release and subsequent detention is presumed, I have only briefly summarized it. A more detailed recitation of this history is set forth in Judge Vilardo's December 18, 2019 Decision and Order (19-CR-0087 [177]).

[4]   Parks' motion was not based entirely on the COVID-19 pandemic. He also argued that there had been a change in the weight of the evidence. 19-CR-0087 [228].

> is 'an ideal environment for the transmission of contagious disease.' . . . Both parties concede that there do not appear to be any confirmed cases of COVID-19 among the inmate population at the [NCJ]. While that is something that certainly can change quickly, the [NCJ] now appears to be a relatively safe, uncontaminated environment. Moreover, while incarceration in any prison poses the risks that living in any facility with many inhabitants poses today, those risks alone do not override the reasons for detention or incarceration." Id., p. 4.

No appeal of this order was taken, and no further release motions have been filed in the criminal case.

**B.     The Petition**

On or about November 19, 2020, the Petition was received by Judge Vilardo, who forwarded it to me to address in conjunction with Parks' pending criminal case. See 19-CR-0087 [332], p. 62.[5] At the December 3, 2020 proceeding in the criminal case, I directed that the criminal and habeas actions be informally consolidated for administrative purposes. January 7, 2021 Text Order.  At Parks' request, I also appointed Cheryl Meyers Buth, Esq., his CJA counsel in in the criminal action, as his standby counsel in this action, and gave Parks until January 4, 2021 to supplement his Petition, but nothing further was filed. Id.[6]

In seeking his pretrial release, Parks alleges that his "on-going pre-trial detention . . . has been illegally prolonged" in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. Petition [1], p. 1, ¶5.  The balance of the Petition alleges that his rights under the Fifth, Eighth, and Fourteenth Amendments have been violated through

---

[5]     Due to delays, which were no fault of Parks or his standby counsel, this action was not formally opened by the Clerk's Office until January 6, 2021.

[6]     In addition to the United States, the Petition names Niagara County Sheriff Michael J. Fillcetti and other unknown Niagara County Correctional Officers as respondents.  I only requested a response to the Petition from the United States.

the conditions of confinement at the NCJ during the COVID-19 pandemic.  For example, Parks alleges that:

--    personal protective equipment ("PPE") "is not given to inmates" with the exception of  "two cotton masks deemed to be reusable in May 2020" (id., p. 5);

--    "[t]here is no social distancing enforcement" (id.);

--    corrections officers and staff "do not wear gloves as they distribute numerous items such as soap, tissue, facility forms, etc." (id.);

--    corrections officers and staff "go home come back the next day and are around 'God knows who'" (id.); and

--    "prison officials who have symptoms and actually admit[ ] to having COVID never get tested which is why the cases do not get reported" (id., p. 6).

Parks also points to two specific incidents that allegedly demonstrate the unsafe conditions at NCJ.  He claims that on September 29, 2020 he was transported for a proceeding in his criminal case without a mask, and that he was transported back to NCJ with two unmasked new inmates, who had not quarantined. Id., p. 4.  He further states that on November 17, 2020, an inmate in his pod contracted COVID, but that the inmates in the pod continued their regular activities without any sanitization or the quarantining of the inmates in close proximity to the infected individual (id., pp. 4-5), and that while he had "tried to keep quiet and roll with the flow", the later incident "tipped the scale" and prompted this action.  Id., p. 6.

C.    **Parks' Post-Argument Submission**

Shortly after oral argument, Parks filed a "Motion for Reconsideration", which I deemed a post-argument submission, since I had yet to render my Report and Recommendation

on the Petition.[7]  In this submission, he continues to describe the conditions of his confinement at NCJ, which make him more at risk for contracting COVID-19.  *See, e.*g., [7], p. 5 (petitioner "is housed amongest [*sic*] 56 inmates 7 showers, 4 phones (no 6ft distance, 2 t.v.'s and no way of social distancing").  He also describes the COVID-19 spread that has occurred at the NCJ, which now has "well over 100 confirmed cases" (out of 300 total inmates) in the last month.  Id., p. 6.  He also attaches a declaration signed by more than 40 other NCJ inmates which states that on January 2, 2021 an inmate tested positive for COVID-19, but the facility took "no precautions" to ensure that any of the other 55 inmates in the housing unit would not contract it, including permitting that inmate to remain in the housing unit for three days during which time he was allowed to use the phone and take showers. Id., pp. 11-13.  He also submits a Declaration from that inmate (Brian Grant), stating that after he tested positive, he was "told to stay" in his cell for 48 hours before being moved to quarantine, but when he returned to the pod 17 days later, neither he nor anyone else in his pod were tested, and later there were six confirmed cases in that pod. Id., p. 15.

## DISCUSSION

**A.     Habeas Relief**

In opposing Parks' Petition, the government argues that "the proper vehicle for him to obtain release is a bail motion".  Government's Response [5], p. 4.  I agree.  "It is well settled that in the absence of exceptional circumstances in criminal cases the regular judicial

---

[7]     Petitioner contends that he "was not given a fair opportunity to orally argue".  [7], p. 1. That is not so. While I announced at the commencement of the February 12, 2021 proceeding that I was inclined to recommend that the Petition be denied, I afforded petitioner a full opportunity at the conclusion of the proceeding to argue in support of the Petition, and stated that I would re-review the papers before rendering my Report and Recommendation.

procedure should be followed and habeas corpus should not be granted in advance of a trial." Jones v. Perkins, 245 U.S. 390, 391 (1918). *See also* Reese v. Warden Philadelphia FDC, 904 F.3d 244, 246 (3d Cir. 2018) ("[c]ourts have consistently refused to exercise their habeas authority in cases where federal prisoners have sought relief before standing trial. Instead, Courts have long stressed that defendants should pursue the remedies available within the criminal action"); Medina v. Choate, 875 F.3d 1025, 1029 (10th Cir. 2017) ("[i]f a federal prisoner is ever entitled to relief under § 2241 based on something that happened before trial, the circumstances are so rare that they have apparently not yet arisen").

Accordingly, this Court and others have held that "'[w]here a defendant is awaiting trial, the appropriate vehicle for violations of his constitutional rights are pretrial motions or the expedited appeal procedure provided by the Bail Reform Act, 18 U.S.C. § 3145(b), (c), and not a habeas corpus petition.'" United States v. Shine, 2018 WL 4627137, *3 (W.D.N.Y.), adopted, 2018 WL 3737877 (W.D.N.Y. 2018) (*quoting* Whitmer v. Levi, 276 Fed. App'x 217, 219 (3d Cir. 2008)); Ali v. United States, 2012 WL 4103867, *1 (W.D.N.Y. 2012) ("[p]etitioner's claims relating to the pending . . . Indictment and his current pre-trial detention arising out of the criminal charges set forth in said Indictment must be brought in the underlying criminal proceeding, not in a separate petition for a writ of habeas corpus"); United States v. Rivera-Banchs, 2020 WL 7090085, *6 (W.D.N.Y. 2020) ("any habeas corpus petition by Defendant [, a federal pretrial detainee,] would be subject to immediate dismissal"). [8] *See also*

---

[8] I do not find these decisions to be in conflict with the Second Circuit's decision in Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008), which recognized the availability of 28 U.S.C. §2241 as a vehicle for a sentenced prisoner to challenge his federal conditions of confinement. *See* McPherson v. Lamont, 457 F. Supp. 3d 67, 75 n. 3 (D. Conn. 2020) (in contrast to "the Second Circuit's minority view that '[u]nder § 2241, a prisoner may challenge the *execution* of his sentence'", "eight of the eleven circuits that have addressed the issue have concluded that claims challenging prison conditions cannot be brought in a § 2241 habeas petition, but must instead be brought under § 1983" (emphasis in original)). By contrast here, as a pretrial federal detainee, the Bail Reform Act provides Parks with sufficient

Reese, 904 F.3d at 247 ("federal defendants who seek pretrial release should do so through the means authorized by the Bail Reform Act, not through a separate § 2241 action"); Fredrickson v. Terrill, 957 F.3d 1379, 1380 (7th Cir. 2020) ("[a] federal detainee's request for release pending trial can be considered under only the Bail Reform Act, and not a § 2241 petition"); Medina, 875 F.3d at 1029 (adopting "the general rule that § 2241 is not a proper avenue of relief for federal prisoners awaiting federal trial"); Jenkins v. Noonan, 2020 WL 2745234, *2 (S.D. Cal. 2020) ("[i]n light of the . . . Bail Reform Act, several courts have held that '§2241 is not a proper avenue of relief for federal prisoners awaiting federal trial'" (citing cases)); Sharp v. United States, 2019 WL 3210078, *2 (N.D. Miss. 2019) ("[a]bsent special circumstances, federal pretrial detainees should not file civil § 2241 actions to challenge their detention because other remedies are available to them from within their criminal cases").

At minimum, a federal pretrial detainee must exhaust his options under the Bail Reform Act before seeking habeas relief. See Stack v. Boyle, 342 U.S. 1, 6-7 (1951) ("[w]hile habeas corpus is an appropriate remedy for one held in custody in violation of the Constitution . . . the District Court should withhold relief in this collateral habeas corpus action where an adequate remedy available in the criminal proceeding has not been exhausted"); Jenkins, 2020 WL 2745234, *2 ("Petitioner has not sought relief in his pending criminal action . . . . As such, Petitioner has failed to exhaust his available remedies, and, thus, the Court denies Petitioner's §2241habeas petition on this ground").[9]  Parks has not done so.  While he

---

remedies. See Reese, 904 F.3d at 247 ("[t]he Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3150, provides a comprehensive scheme governing pretrial-release decisions").

[9]     But see Medina, 875 F.3d at 1029 ("*this is not to say that federal prisoners can pursue relief under § 2241 after [pretrial] avenues have been exhausted.* If a federal prisoner is ever entitled to relief under § 2241 based on something that happened before trial, the circumstances are so rare that they have apparently not yet arisen" (emphasis added)).

previously moved for his temporary release from custody in the criminal action during the early stages of the COVID-19 pandemic, he never appealed that decision. Much has also changed since then, including the passage of nearly another year in detention.[10] Nothing prevents him from filing another motion for this or other similar relief under the Bail Reform Act.[11] *See* United States v. Martin, 447 F.Supp.3d 399, 401 (D.Md. 2020) (the health risk posed by COVID-19 "can indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of defendant . . . and secure the safety of the community").

As the government notes, its position also finds support in Younger v. Harris, 401 U.S. 37 (1971). Government's Response [5], p. 5. Younger recognized that federal courts are bound by "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief". Id. at 43. Hence, a court may civilly enjoin a criminal prosecution only "when absolutely necessary for protection of constitutional rights," and only "under extraordinary circumstances, where the danger of irreparable loss is both great and immediate". Id. at 45.

Although Parks seizes on that portion of Younger to argue that the "COVID-19 meets the requirements of the Younger abstention doctrine as COVID-19 poses a great and

---

[10] Whereas no confirmed cases of COVID-19 existed at NCJ when Parks sought his temporary release, unfortunately that no longer remains so.

[11] I offer no prediction on the merits of such a motion, which, like the prior motion, would likely be addressed by District Judge Vilardo. Any such motion would also need to address the 18 U.S.C. §3142 factors, which are not addressed in the Petition. *See* Jenkins, 2020 WL 2745234, *3 ("the COVID-19 pandemic cannot be the sole basis for releasing a defendant from custody pending trial; the Court must still consider the Section 3142 factors").

immediate on-going danger to our nation" (Parks' Post-Argument Submission [7], pp. 2-3), "no danger exists where the defendant has the opportunity to offer a defense in the criminal prosecution". Ceglia v. Zuckerberg, 600 Fed. App'x 34, 37 (2d Cir. 2015) (Summary Order). Here, "[t]here are adequate remedies available to petitioner within the underlying criminal proceedings to address the issues raised in the petition". Ali, 2012 WL 4103867, *2.

Parks' Post-Argument Submission ([7], pp. 3-4) cites McPherson, supra, and Basank v. Decker, 449 F.Supp.3d 205 (S.D.N.Y. 2020), but these cases do not compel a different conclusion. Unlike here, McPherson addressed a §2241 action brought by *state* inmates (both pre- and post-conviction). 457 F.Supp.3d at 70, 74. Likewise, Basank addressed a §2241 action brought by petitioners "confined for civil violations of the immigration laws". 449 F.Supp.3d at 216.

Although I take Parks' concerns very seriously, a bail motion is the proper vehicle to address those concerns. Therefore, I recommend that his request for habeas relief be denied.

**B.      Injunctive Relief**

In order to obtain an injunction, the movant must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. *See* Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).[12]  A mandatory injunction, as is sought here, "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage

---

[12]    "[T]he standard for an entry of a [temporary restraining order] is the same as for a preliminary injunction". *See* Mitchell v. Wolf, 2020 WL 5793298, *2 (W.D.N.Y. 2020).

will result from a denial of preliminary relief." Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995).

Since I have concluded that Parks is not entitled to habeas relief under 28 U.S.C. §2241, I likewise conclude that he has not satisfied the first prong of the test for injunctive relief and cannot establish a likelihood of success on the merits. *See* Holloway v. Wolcott, 2020 WL 3172772, *3 (W.D.N.Y. 2020). Even if that were not fatal to Parks request for injunctive relief, I would find that he has not otherwise demonstrated a likelihood of success on the merits.

Deliberate indifference claims brought by pretrial detainees due to the conditions of confinement "are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment". Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To establish such a claim, the plaintiff must satisfy two prongs: (1) the conditions of which the inmates complain, "either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness" (id. at 30); and (2) the official "knew, or should have known, that the condition posed an excessive risk to health or safety". Id. at 35.

Here, Parks falls short of establishing that the prison conditions at NCJ pose a substantial risk of serious harm to him from COVID-19. In denying his motion for temporary release in the criminal action, Judge Vilardo noted that "Parks does not allege that he suffers from any medical condition that would render him a vulnerable person as defined by the CDC". 19-cr-0087 [247], p. 4. Parks, who is in his 30's, points to a single article from the Atlantic indicating that a "man in his 30's is more likely to develop a months long illness [from COVID-19] than that of a 60 year old". Parks' Post-Argument Submission [7], p. 3. While that is concerning, at this point I remain guided by the CDC, and Parks has failed to identify *any*

condition, much less one identified by the CDC, that would render him more vulnerable should he contract COVID-19. *See* Vides v. Wolf, 2020 WL 3969368, *11 (W.D.N.Y. 2020) ("[c]ourts that have found that petitioners suffer from a serious medical need for purposes of the deliberate indifference analysis in the context of the COVID-19 pandemic have done so only for detainees suffering from conditions recognized by the CDC as placing individuals at higher risk"); Sicap v. Decker, 2020 WL 5440591, *3 (S.D.N.Y. 2020) ("underlying medical conditions that are not shown to put detainees at higher risk of severe illness or death if infected with COVID-19 are not sufficiently serious to state a cognizable constitutional claim"); Lagan v. Edge, 2020 WL 3403109, *5 (E.D.N.Y. 2020) ("the Court [is not] aware of any case in which a court released a prisoner because of COVID-19 without first finding that the prisoner was at serious risk of complications or death due to exposure to the virus").

**CONCLUSION**

For these reasons, I recommend that Parks' motion for *in forma pauperis* status [2] be granted, but that his Petition [1] be dismissed. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by April 8, 2021. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: March 22, 2021

      /s/Jeremiah J. McCarthy
      JEREMIAH J. MCCARTHY
      United States Magistrate Judge